IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| GREGORY S. LIEGEY, | CHAPTER 7 |
|     Debtor | |
| | CASE NO. 1:09-bk-00661MDF |
| ROBERTA A. DeANGELIS, | |
| ACTING UNITED STATES TRUSTEE, | |
|     Movant | |
| v. | |
| GREGORY S. LIEGEY | |
|     Respondent | |

## OPINION

The United States Trustee ("UST") filed a Motion to Dismiss the case of Gregory S. Liegey ("Debtor") under 11 U.S.C. § 707(b) alleging that it would be an abuse of chapter 7 if the Court were to grant relief in this case. Because dismissal for abuse under § 707(b) applies only when a debtor is seeking to discharge debts that are "primarily consumer debts," the parties requested that the Court determine, as a threshold matter, whether the debts were "primarily consumer" in nature. Following a hearing on this issue, the Court finds that the debts in the within case are "primarily consumer debts" and that Debtor's case is subject to possible dismissal under §707(b).

### I. Procedural History

Debtor filed his bankruptcy petition on January 1, 2009. The UST moved to dismiss the case on May 4, 2009 under § 707(b)(3). Debtor denied that his case was subject to dismissal for abuse under this provision because most of his debts were related to the operation of his business. On May 28, 2009, Debtor and the UST filed a joint Motion in Limine requesting that a

hearing be held on the sole issue of whether Debtor's debts were "primarily consumer debts." The Motion was granted and hearing was held on June 1, 2009.[1]

## II. Factual Findings

Between 1993 and 2008, Debtor launched two business ventures – the first with great success and the second with disastrous results. Debtor developed a fantasy sports league company that he sold for approximately $3 million in 1999, resulting in a profit to Debtor of approximately $1.5 million.  In April 2004, Debtor started a second business operating three Maggie Moo ice cream outlets. The business was operated through two subchapter "S" corporations, Three Moochachas, Inc. ("Moochachas") and Three Moochachas, North, Inc. ("Moochachas North"). Moochachas operated two stores in York and Moochachas North operated a store near Harrisburg.  Unfortunately, these businesses were not successful and were closed in November 2008.

Although Debtor created two corporations to operate the three franchises, he frequently used personal funds to pay corporate debt and incurred personal debt to satisfy corporate obligations. For example, Moochachas began operating two Maggie Moo franchises in 2004, but it was not until 2008 that Debtor obtained corporate credit cards to pay for business expenses. Until 2008 Debtor used personal credit cards for this purpose. Debtor not only incurred debt to finance the ice cream businesses, he also invested approximately $1 million of the profit from the sale of the fantasy sports league company to obtain and operate the franchises.

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334.  This matter is core pursuant to 28 U.S.C. §157(b)(2)(A).  This Opinion constitutes findings of fact and conclusions of law required to be made by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

Debtor is married, but his spouse did not join in the petition. Both debts listed on Schedule D are owed jointly by Debtor and his wife. These debts are secured by their home and a jointly-owned 2004 Nissan Murano. In October 2008, Debtor and his spouse refinanced their home to obtain lower mortgage payments. As a condition to refinancing, Wells Fargo Bank required Debtor and his wife to pay down three personal credit cards totaling $53,377.35. (Debtor's Ex. 2) Debtor testified that he paid expenses for the businesses using these accounts, although he admitted that the cards were used for personal expenditures as well. The Nissan was purchased in November 2008 after Debtor closed the Maggie Moo stores. Debtor obtained a position as branch manager of a bank, and the vehicle was acquired for him to use in connection with his new position. (N.T. 21)

All of the debts listed on Schedule F are reported as being Debtor's individual debts and were incurred, at least in part, in the operation of the three Maggie Moo stores. On Schedule F, Debtor characterized the corporate debts for which he had no direct personal liability as "disputed" and described his liability as "potential." He also described corporate debts that he co-signed or guaranteed as "disputed" and described his liability as "potential." Listed among the latter claims were five corporate credit cards that Debtor co-signed in his individual capacity.[2] A Sam's Club Discover Card is listed on Schedule F as a personal card, but Debtor testified was the card was used to obtain supplies for the businesses.

Debtor included several debts on Schedule F that he stated were corporate debts which he had personally guaranteed. The landlord for the Moochachas North property, Stanbery

---

[2]The five corporate credit cards that Debtor was required to co-sign were Chase, Discover, Advanta and two Capital One.

3

Harrisburg, L.P. ("Stanbery"), is listed as an unsecured creditor based upon Debtor's written guarantee of the lease payments. Before Debtor filed his petition, Stanbery commenced litigation in state court against Moochachas North and Debtor individually to collect unpaid rent and other damages related to the breach of the lease. Debtor estimated Stanbery's claim at $120,000.00. Debtor also listed as personal debt claims against Moochachas and Moochachas North held by Bergdoll and Company ("Bergdoll"), York Plaza LTD Partnership ("Plaza") and 2430 E. Market St. LLC ("Market St.") because Debtor personally gave these creditors assurances that the debts would be repaid. No written guarantees for the Bergdoll, Plaza and Market St. debts were in effect at the time of the filing of the petition.

Debtor also includes on Schedule F loans in a total amount of $30,000.00 that Debtor received from his father, Joseph Liegey. In August 2007, Debtor asked his father for a $20,000.00 loan to pay off business debts. In response to this request, Debtor's father gave Debtor a check for $20,000.00, which was deposited in the joint bank account of Debtor and his wife. When he later needed additional funds, Debtor requested and received another $10,000.00 from his father. Disbursements were made from the joint account to pay both personal and business debts, specifically to make payments on a Bank of America credit card that was used to pay both personal and business expenses.

Although he is now claiming that most of the debt he is seeking to discharge in his bankruptcy case is business debt, on the third page of his petition he checked the box to indicate that his debts were "primarily consumer debts."

### III. Discussion

Section 707(b)(1) provides that a bankruptcy court may dismiss a case "filed by an individual debtor . . . whose debts are primarily consumer debts. . . if it finds that the granting of

4

relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). The moving party bears the burden of establishing that a debtor's case includes "primarily consumer debts." *In re Price*, 280 B.R. 499, 501 (B.A.P. 9th Cir. 2002); *In re Reeves*, 327 B.R. 436, 440 (Bankr. W.D. Mo. 2005).

    *A.    The meaning of "primarily consumer debts"*

The Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family or household purpose." 11 U.S.C. § 101(8). Consumer debt is distinguished from business debt, the latter of which is incurred with a "profit motive." *Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796, 806 (10th Cir. 1999); *accord Cypher Chiropractic Center v. Runski (In re Runski)*, 102 F.3d 744, 747 (4th Cir. 1996); *In re Booth*, 858 F.2d 1051, 1054-55 (10th Cir. 1990); *In re Miller*, 335 B.R. 335, 339 (Bankr. E.D. Pa. 2005). To determine whether a debt is a consumer debt, the Court must examine the purposes for which the debt was incurred. *Consumer United Capital Corporation v. Straughter (In re Straughter)*, 219 B.R. 672, 681-82 (Bankr. E.D. Pa. 1998).

Courts have adopted varying approaches to defining whether debts are "primarily" consumer debts as opposed to business-related or other non-consumer debts.[3] The majority of courts have held that if more than fifty percent of the total value of debts are consumer debts, the claims against a debtor are "primarily" consumer debts. *See In re Stewart,* 175 F.3d at 808 ("primarily means over 50% of debt"); *In re Kelly,* 841 F.2d 908, 913 (9th Cir.1988) (holding

---

[3]A debt incurred with a profit motive clearly is not a consumer debt. However, there are other types of debt that are not business debts, but which also fall outside the category of consumer debt. *IRS v. Westberry (In re Westberry)*, 215 F.3d 589, 593 (6th Cir. 2000) (income taxes are not consumer debt for the purpose of enforcing the co-debtor stay under 11 U.S.C. § 1301).

5

that when "more than half ... of the dollar amount owed is consumer debt, the statutory threshold is passed"); *In re Victoria*, 389 B.R. 250, 254 (M.D. Ala. 2008) ("primarily" consumer debt means more than half). I agree with the majority's approach. Accordingly, if the dollar amount of Debtor's consumer debt is greater than the dollar amount of Debtor's non-consumer debt, this case is subject to the provisions of §707(b).

    B.    *Analysis of scheduled debts*

The Court is unable to determine by simply examining Debtor's schedules whether his debts are primarily consumer or non-consumer in nature. Debtor's schedules include debt incurred by Moochachas and Moochachas North without differentiating between corporate debts he co-signed or guaranteed from corporate debt he simply felt obligated to pay. To determine whether particular debts listed are primarily consumer or non-consumer claims against Debtor or not claims against Debtor at all, the Court has divided the creditors listed in the schedules into one of three categories – Individual Consumer Debt, Individual Business Debt and Corporate Debt. These classifications are set forth in the attached Appendix.

The debts listed on the Appendix as "Corporate Debt" are obligations incurred by Moochachas and Moochachas North for which Debtor did not serve as either a co-obligor or guarantor. Debtor has asserted that he is personally obligated to pay some of these debts, particularly the amounts owed to Bergdoll Company, the accountants, and York Plaza LTD Partnership and 2430 E. Market St LLC, the lessors for the York locations. Debtor argues that these debts should be treated as his personal obligations because he assured these creditors that he would make sure that they "got paid." Debtor's vague representation to "take care" of the York lessors and Bergdoll because of his personal connections to these creditors is insufficient to establish that Debtor orally guaranteed these debts. Further, even if these assurances are

6

considered sufficient to constitute oral guarantees, I find that these representations are unenforceable under the statute of frauds. "Ordinarily, the interest which a stockholder has is not individual, for he cannot be held for the corporate debts, and, if a promise to indemnify its creditor is made, the statute of frauds applies." *Bayard v. Pennsylvania Knitting Mills Corp.,* 290 Pa. 79, 84, 137 A. 910, 912 (1927); 33 P.S. §3. Because these debts are unenforceable against Debtor, they are irrelevant to the analysis of whether Debtor's debts are primarily consumer debts. Only those corporate obligations that Debtor either co-signed or guaranteed are relevant to this determination.

The remaining debts listed on Schedules D and F were incurred either for personal and household use (Individual Consumer Debt) or in connection with the operation of the Maggie Moo franchises and for which Debtor is personally liable (Individual Business Debt).

   *1. Individual Consumer Debt*

Debtor argues that the balance owed on the loan secured by a mortgage on the home he owns jointly with his wife is partially consumer debt and partially business debt. The majority of courts have determined that purchase money mortgages on residential property and second mortgages "used for non-business purposes, such as consolidating other consumer debt or for home improvement are consumer debt." *In re Praleikas*, 248 B.R. 140, 144-45 (Bankr. W.D. Mo. 2000) *quoted in In re Price*, 280 B.R. at 502 (other citations omitted). Debtor's mortgage is a refinancing of a purchase money mortgage. When Debtor and his wife refinanced the mortgage on October 15, 2008, the existing mortgage in the amount of $190,948.68 was paid in full. As a condition to refinancing, the lender required Debtor and his wife to pay down the outstanding balances on three personal credit card accounts – Bank of America, Sam's Club and Discover.

7

Debtor argues that only the amount paid to satisfy the existing mortgage is consumer debt and that the credit card debt, some of which was incurred to satisfy business expenses, is business debt.

Debtor has made his argument, but he has failed to produce adequate evidence to support his position. Once the UST established that the Wells Fargo loan was obtained by Debtor and his wife to address their personal financial difficulties, the burden shifted to Debtor to demonstrate that the loan was at least partially used for business purposes. Debtor asserted that the credit card debt should be classified as business debt, but no evidence other than Debtor's unsupported representations was introduced to substantiate this allegation.[4] Further, it is clear from Debtor's testimony that the purpose of the refinancing was not to pay business debt. Debtor and his wife refinanced their home for personal, household purposes. Even if the credit card balances paid at settlement were attributable to business expenses, the payment of these bills was incidental to a consumer transaction. The proceeds of the loan were not invested in the businesses, neither were any of the proceeds of the loan used for other investment purposes. Debtor admitted that if Wells Fargo had not required him to borrow additional amounts to reduce his unsecured debt, he would have refinanced only the outstanding balance of his prior mortgage. Therefore, I find that the entire amount of the outstanding Wells Fargo loan is consumer debt.

---

[4]To support his representation that these three credit cards were used primarily for business expenses, Debtor introduced several credit card statements from 2007 and 2008 for a Bank of America card, which included primarily business expenses. The statements introduced, however, were for a different Bank of America account, not the one that was paid down at settlement. No documentation was provided to substantiate Debtor's allegation that the balances on the three cards paid at settlement were attributable to business expenses.

8

Case 1:09-bk-00661-MDF    Doc 41    Filed 11/13/09    Entered 11/13/09 16:38:09    Desc
                      Main Document          Page 8 of 14

### 2. *Individual Business Debt*

Of the remaining debts reported on Debtor's schedules, $225,613.00 is attributable to business debt. This amount includes six credit cards that primarily were used to purchase equipment and supplies for the franchises, the balance of the loan incurred to purchase the vehicle Debtor uses at his current employment, a loan made by Debtor's father to Debtor for business purposes, and Stanbery's claim for damages. I find that the evidence presented by Debtor established that the loan for Debtor's current vehicle and the loan made by Debtor's father were made for business purposes.

Stanbery's claim against Debtor, which is unliquidated, is based upon a written guarantee Debtor executed in connection with the negotiation of the Moochachas North lease. Stanbery required Debtor, as a condition to it entering into the lease agreement with Moochachas North, to guarantee the full performance of the lease and to be responsible for all expenses incurred by Stanbery to collect amounts due under the lease. The guarantee further provides that all sums due bear interest from the date payment is due at the prime rate of interest charged by Bank of America. Stanbery has not filed a proof of claim in Debtor's case, so the starting point of determining the amount of the debt is the lease and the accompanying guarantee.

Debtor states in his schedules that his obligation on the guarantee of the Moochachas North lease is $120,000.00, which he calculated by multiplying an "estimated" rent amount of $5,000.00 by the 24-month period set forth in the guarantee. No supporting evidence or rationale is provided for the $5,000.00 monthly amount, and this amount contradicts the explicit terms of the guarantee, which limits Debtor's liability to 24 months of "base rent." "Base rent" is a defined term in the lease and is listed as $3,924.00 per month during the fourth through the

9

seventh years of the lease. Therefore, the Court can easily compute from these terms that the maximum amount for which Debtor could be liable to Stanbery under the lease is $94,176.00.

In addition to the limitations imposed by the terms of the guarantee, the UST also argues that Stanbery's claim is capped by the provisions of 11 U.S.C. § 502(b)(6), which limits a landlord's claim on rejection damages to the lesser of one year's rent or 15% of the rent due for the remainder of the lease, but not for a period in excess of three years.[5] Before Debtor filed his petition, Stanbery filed a complaint in state court in which it alleged that on or about December 1, 2008, Moochachas North had ceased operations and abandoned the premises. Based upon this breach, Stanbery claims damages in its complaint in the amount of $16,957.71 for the months of October, November, and December 2008. The damage claim for the three months includes: (1) $11,772.00 in "base rent;" (2) $1,440.15 in common area maintenance ("CAM") fees; (3) $76.08 in insurance costs; (4) $585.87 in taxes; (5) $327.00 for "marketing fund" charges; (6) $1,057.57 in water and sewer charges; (7) $199.34 in late charges; and (8) $2,500.00 in legal fees. Against these unpaid amounts Stanbery credited Debtor for $1,000.00 in "unapplied payments." Under its terms, the lease agreement included CAM fees, insurance, taxes and the marketing fund charges as "additional rent."

---

[5]Section 502(b)(6) provides in relevant part:
(b) . . . .the court . . . shall allow such claim in such amount, except to the extent that –
(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds –(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of – (i) the date of the filing or the petition; and (ii) the date on which such lessor repossessed, or the lessee surrendered, the lease property; plus (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates. 11 U.S.C. § 502(b)(6).

The UST alleges that Stanbery's claim against Debtor is not just limited by the terms of the guarantee, it is further limited by statute. Citing *Kuske v. McSheridan (In re McSheridan)*, 184 B.R. 91, 99-100 (B.A.P. 9th Cir. 1995), which sets forth a three-pronged test for determining whether a claim constitutes "rent" under the provisions of § 506(b)(6), the UST argues that some of the claims listed in Stanbery's complaint are not recoverable under the statute. The UST concedes that the charges for "base rent," common area maintenance, insurance, taxes and marketing meet the "rent reserved" test as set forth in *McSheridan*, but asserts that water and sewer charges, late charges and attorneys' fees do not.

The UST is correct that the limitations of § 502(b)(6) would be applied to a claim filed by Stanbery against Debtor as the guarantor of the lease. *See Flanigan v. Samalex Trust (In re Flanigan)*, 374 B.R. 568, 575. (Bankr. W.D. Pa. 2007)(citing cases). However, the UST is requesting the Court to determine the extent of Stanbery's claim when Stanbery is not a party to this proceeding. Although the amount of the prepetition claim can be estimated with some certainty from the allegations of the complaint and the terms of the lease guarantee, the Court is reluctant to estimate the value of any claim that Stanbery may make for rejection damages when the landlord has not been made a party to this matter and has not filed a proof of claim. Therefore, the Court finds that the maximum amount for which Debtor may be found liable on the lease for the Harrisburg location is $94,176.00, which will be considered as the amount of the debt owed to Stanbery, but only for the purpose of determining the amount of Debtor's consumer debt.

11

*C. Conclusion*

Having reviewed Debtor's schedules of liabilities and having taken testimony regarding the circumstances surrounding the creation of these debts, the Court finds that Debtor's Individual Consumer Debts on the date of filing totaled $251,000.00 and Debtor's Individual Business Debt totaled $225,913.00. Debtor's consumer debt being in excess of fifty percent of the total debt, I find that Debtor's debts are "primarily consumer debts." Accordingly, Debtor's case is subject to the provisions of § 707(b). A hearing will be scheduled at which time further evidence may be offered on whether the granting of a relief in this case would be an abuse of the provisions of Chapter 7. An appropriate order follows.

By the Court,

_Mary D. France_
Chief Bankruptcy Judge

Date: November 13, 2009

*This document is electronically signed and filed on the same date.*

| APPENDIX<br>Gregory S. Liegey<br>Case No. 1:09-bk-00661MDF | | | | | |
|---|---|---|---|---|---|
| Individual Consumer Debt | | Individual Business Debt | | Corporate Debt | |
| | | Advanta | $18,331 | 2430 E. Market St LLC | $37, 665 |
| Wells Fargo | 251,000 | Capital One – 4191 | 6,427 | A Action Lock | 64 |
| | | Capital One – 2841 | 20,931 | ADT | 1,210 |
| | | Chase | 30,209 | Applied Media | 198 |
| | | Discover | 6,717 | Bergdoll & Co. | 4,613 |
| | | Joseph Liegey | 30,000 | Bergdoll & Co. | 3,391 |
| | | Stanbery Acquisitions | 94,176 | Carpigiani | 223 |
| | | Berks Community Fed CU | 15,700 | CFM Food Distributors | 6,416 |
| | | Sam's Club Discover | 3,422 | Cintas | 521 |
| | | | | Coca-cola | 1,148 |
| | | | | Coca-cola | 382 |
| | | | | Columbia Gas | 151 |
| | | | | Donegal Companies | 334 |
| | | | | Dumac Business Sys. | 1,171 |
| | | | | Garrity Glass | 205 |

13

| Individual Consumer Debt | | Individual Business Debt | | Corporate Debt | |
|---|---|---|---|---|---|
| | | | | Gettle | 93 |
| | | | | J.C. Ehrlich | 304 |
| | | | | Lilar | 286 |
| | | | | Met-Ed | 2,690 |
| | | | | Microbac | 360 |
| | | | | NexCen | 108 |
| | | | | Oasis Supply | 97 |
| | | | | Ohio Casualty | 211 |
| | | | | PP&L | 3,588 |
| | | | | UGI | 151 |
| | | | | Val Pak | 875 |
| | | | | Verizon – 2621Y | 214 |
| | | | | Verizon – 5507Y | 468 |
| | | | | XM Satellite Radio | 106 |
| | | | | York Waste Disposal | 92 |
| | | | | York Plaza LTD Partnership | 25,000 |
| Total individual consumer debt | $251,000 | Total individual business debt | $225,913 | Total corporate debt | $92,335 |